## LOUGEE v. PICKRELL·et al.

### (Circuit Court of Appeals, Sixth Circuit. April 5, 1918.)

#### No. 2985.

1. JOINT ADVENTURES ⬥7—EFFECT OF NOTICE TO ONE JOINT ADVENTURER.

Where only one of the defendants had any notice of complainant's rights in the stock of a railroad company, and when he induced the other defendants to join him in acquiring the road, he was acting as agent of the seller, instead of his associates, his notice is not imputable to the other defendants, and they cannot by reason thereof be charged with knowledge of complainant's interest.

2. TRUSTS ⬥107—CONSTRUCTIVE TRUSTS—BURDEN OF PROOF.

Where, on the ground that defendant, who, with others, acquired the stock of a railroad company, knew of his interest in the stock, which stood in the name of another, complainant sued to compel defendant to account for the profits, complainant has the burden of proof.

3. TRUSTS ⬥110—CONSTRUCTIVE TRUSTS—EVIDENCE—SUFFICIENCY.

In a suit to compel defendant to account for one fourth of the profits resulting from the acquisition of the stock of a street railroad, which stood in the name of a third person, evidence *held* insufficient to show that defendant was charged with the duty of investigating complainant's exact interest, or to show that the seller, in whose name the stock stood, was in any way overreached, so as to entitle complainant to relief.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by W. S. Lougee against James M. Pickrell, in which Mrs. James M. Pickrell, as executrix, was substituted as defendant, and John T. Buckley and others. From a decree dismissing the bill, complainant appeals. Affirmed.

The following is the opinion of Cochran, District Judge, in the court below:

This cause is before me for final decree. In January, 1905, the defendants, James M. Pickrell, John C. Noel, James T. Buckley, and Rolla D. Armstrong, purchased from Albert Norvale, vice president of the Municipal Bond & Securities Company, a corporation, doing business in Cincinnati, Ohio, all the capital stock of the Frankfort & Versailles Traction Company, a Kentucky corporation owning and operating an electric street railroad in Frankfort, Ky., and having the right to construct and operate an electric interurban railroad between Frankfort and Versailles, connecting with its street railroad, to enable it to do which it had acquired certain rights of way, except certain shares held by its directors, to qualify them to act, and all its bonds. The total capital stock amounted to $300,000, and the bonds to $50,000. The capital stock purchased was in the name of Albert Norvale. The defendant John C. Noel was president of the Traction Company, and the defendant John T. Buckley a director and general manager thereof. The other two defendants had had no previous connection with that company. The interests of the defendants Pickrell and Buckley in the purchase was one-third each, and that of the defendants Noel and Armstrong one-sixth each. The consideration given by them for the stock and bonds was the payment of a note of Norvale held by the First National Bank of Springfield, Ohio, for the sum of $25,000, secured by $25,000 of the bonds of the outstanding indebtedness of the Traction Company, amounting to $17,000, secured to a certain extent by others of its bonds, and to Norvale of $1,000 cash, or, in all, of the sum of $43,000. The physical condition of the Traction Company's street railroad at that time was very inferior. The defend-

ants, after their purchase, advanced or secured for the Traction Company between $40,000 and $45,000, which was expended in improving its street railroad, and by reason of this, and the location of the new capital along its line, the value of its capital stock was considerably enhanced. On September 26, 1905, the defendants sold the stock and bonds of the Traction Company to Guy Mallon for $105,000 cash and $20,000 of bonds, worth $15,000.

The plaintiff claims that at the time of the purchase by defendants as thus set forth he had an equitable interest in the capital stock of the Traction Company so sold of one-fourth thereof, that the defendants at the time of their purchase knew or ought to have known that he had such interest, and that by reason of these two facts they are accountable to him for one-fourth of the profits which they made out of the transaction. This suit was brought September 8, 1908, nearly three years after the transaction was closed to compel them to so account. The defendants deny that plaintiff had any such interest in the capital stock so purchased by them, or that they knew that he had, or ought to have known that he had, such interest when they purchased. Such are the issues presented by this case.

Conceding that plaintiff had such interest, he must fail certainly as to all of the defendants, except Buckley. There is no evidence tending to show that they knew or ought to have known that he had any such interest; and plaintiff does not claim that there is any such evidence. His position is simply that defendant Buckley knew or should have known of his interest, and that the defendants are chargeable with his notice. But, assuming that the defendant Buckley knew or should have known, neither of the defendants is chargeable with his notice. He was not the agent of either one of them in the transaction. Rather he was the agent of Norvale in getting them to enter into the purchase with him. Nor were he and the other defendants partners. They were simply copurchasers and co-owners of the stock. I am not aware that one copurchaser or co-owner is chargeable with notice of what another copurchaser or co-owner knows.

How, then, is it as to the defendant Buckley? To present this part of the case, further statement of the facts is essential. The Frankfort & Versailles Traction Company was created and organized and acquired its property rights and franchises October 26, 1903. The bulk of them it acquired from the Frankfort & Suburban Railway Company. Its capital stock was owned by the defendant Buckley and his brother-in-law, Pat McDonald, one-fourth each, and the First National Bank of Springfield; Ohio, one-half, and the company was indebted to the bank in a considerable sum, for $9,000 or $10,000 of which Buckley was personally bound. Its street railroad was operated by him as general manager. In the latter part of 1902, this company gave to the plaintiff an option to purchase its property and franchises for $35,000, and agreed to pay him a commission of $5,000, one-third of which he agreed to pay to the defendant Buckley, with the approval of his associates. This option was extended from time to time, and during its existence the plaintiff acquired certain additional franchises and rights. The plaintiff was unable to exercise this option. Thereafter, upon the belief that he might be able to interest certain parties at Sharon, Penn., in the property, the price was reduced to $25,000 net to the company. This cut out any commission being paid by the company, and defendant Buckley's sharing in such commission. The plaintiff had to look to the purchasers for any compensation to himself. Plaintiff was unable to interest those parties in the property. Thereafter, in the late summer of 1903, plaintiff made a deal with the Cincinnati Company, whereby that company agreed to organize a corporation to acquire the property and franchises covered by his option, and the other rights and franchises held by him, and he was to receive $5,000 in cash out of the proceeds of the sale of its bonds and one-fourth of its capital stock. It was provided in the contract between plaintiff and that company that $60,000 of the stock owned by him was "to be pooled with the stock of the Municipal Bond & Securities Company for voting purposes for a period of two years from the organization of said corporation." The Frankfort & Suburban Company's option to sell for $25,000 was extended to this deal; and it was pursuant thereto that it was created and organized October 26, 1903. It is claimed by plaintiff that defendant

Buckley was to receive $1,000 of the $5,000 so to be paid him. But I do not think that the evidence sustains this claim. He ceased to have any interest in what plaintiff was to make out of the transaction when his company ceased to have to pay plaintiff any commission, which was when the price was reduced from $35,000 to $25,000. The only occasion for defendant Buckley's being interested in what plaintiff would make was that his company was compensating him.

In order to carry the deal through, it was essential that in some way the Frankfort & Suburban Company be paid its $25,000. Neither plaintiff, nor the Cincinnati Company, nor Norvale, had sufficient cash to pay it or any portion thereof. Thereupon all of its capital stock, amounting to $300,000, except what was necessary to be issued to its directors to qualify them to act, was issued to Norvale, and the bonds, amounting to $50,000 were issued and delivered to him; he executed his note to the First National Bank of Springfield, Ohio, for the $25,000 due it. and pledged $25,000 of the bonds to secure same, retaining the other $25,000; and the Frankfort & Suburban Company and plaintiff conveyed to the Frankfort & Versailles Traction Company all their property, rights, and franchises. In some way the defendant Buckley continued liable to the Springfield Bank for $9,000 or $10,000 of the debt due it. By the transaction, therefore, that bank got no money, and defendant Buckley got no relief from the burden upon him, and it cannot be said that the situation of either was a bit better.

It is by virtue of the facts set forth that plaintiff claims that he had an equitable interest of one-fourth in the stock so purchased by the defendants. He claims, further, that the defendant Buckley was aware of the nature of his contract with the Cincinnati Company and had received from him a copy thereof. This the defendant Buckley denies. He admits, however, that he did know that plaintiff was to receive from the Cincinnati Company $5,000 in cash and a block of the stock. The evidence does not justify the conclusion that he knew more than this, and it is possible that this is sufficient knowledge to answer plaintiff's purposes so far as this part of his case is concerned.

But, conceding that plaintiff did have an interest in the capital stock, and that defendant Buckley is chargeable with notice thereof, I do not think that plaintiff is entitled to recover. How did all the capital stock, plaintiff's interest therein, as well as that of the Cincinnati Company, come to be put in Norvale's name? Plaintiff offers no explanation of this. It is not accounted for by the contract between plaintiff and the Cincinnati Company. That contract did not contemplate that any of the capital stock, much less plaintiff's interest therein, should be put in Norvale's name. The provision as to pooling did not call for this. It called for pooling $60,000 of his interest in the stock, and not the whole of it, and it was not necessary to put any of it in Norvale's name in order to pool it.

The true explanation of the entire stock, except what was necessary to qualify the directors, being put in Norvale's name, and of all the bonds being delivered to him, was that he was giving his own personal note for the $25,000 due the Springfield Bank, which was the only possible way of putting the deal through. He wanted the stock and bonds to protect himself from this liability, and it was right that he should have them. To protect himself, he had to have the power and right to dispose of them. When, therefore, Norvale made the trade with defendants, he had the right to sell all the stock in his name. The fact that plaintiff had an interest therein was not antagonistic to this. At that time the Traction Company had been operated for over a year. Neither Norvale nor plaintiff had been able to do anything towards selling the stock or bonds, or raising money in any other way, to pay the Springfield Bank, or to relieve the defendant of his burden. Norvale had exhausted his resources in providing money to keep the street railroad running. It was about to quit running unless something was done, and it was high time that something be done. The Springfield Bank and the defendant Buckley had been extremely indulgent with plaintiff and the only concern which he had been able to interest in the venture. Norvale seems to have recognized this, and did the only thing he could do, to wit, dispose of the stock and bonds to

the defendant Buckley and the persons whom he was able to interest in the property with him for practically the debt against it. There is no reason to believe that the stock and bonds were worth anything more than the purchase price. It was by the ability of defendants to put money into the property and improve its condition, in connection with the location of the state capital along the line of the street railroad, that they were enabled to make a profit out of the transaction. It is not unlikely that plaintiff knew of the sale, and, if he did not approve it, was indifferent as to it. For some reason or other, he waited nearly four years before asserting any claim against the defendants.

I am therefore constrained to hold that plaintiff's bill must be dismissed.

E. H. Moore, of Youngstown, Ohio, R. W. Edwards, of Cleveland, Ohio, and T. L. Edelen, of Frankfort, Ky., for appellant.

Jouett & Jouett, of Winchester, Ky., and Hazelrigg & Hazelrigg, of Frankfort, Ky., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

PER CURIAM. It is deemed unnecessary to set out at length here a statement of the facts in this case. Such a statement would necessarily be long and involved, although the facts themselves are not difficult to understand. We are content to take the statement made by the learned District Judge as our own, especially as we are compelled to reach the conclusion upon the merits of the case at which he arrived.

[1] So far as the defendants other than John T. Buckley are concerned, we regard it as rather fanciful to consider them the principals with Buckley as the agent, and that consequently they become charged, in the acquisition of stock in the traction company from Buckley, with the knowledge of any secret trust impressed upon it which it is assumed Buckley then had. With the District Court, we think the facts suggest that Buckley, in the sale of this stock to himself and associates, was the agent of Norvale, the seller, rather than the agent of his associates in the purchase, and it is our view that the court below was distinctly right in briefly dismissing from the contentions in this case the defendants Noel, Armstrong, and the estate of Pickrell.

[2, 3] The chance for the plaintiff, appellant, to recover at all from the defendant, John T. Buckley, depends practically upon the solution of the question of fact whether Buckley knew of the contract entered into between Lougee, plaintiff, and Norvale's Bond & Securities Company, August 5, 1903, with modification five days later, assuming that this contract continued the measure of Lougee's interest in the Traction Company until Norvale sold the company to Buckley and his associates in December, 1905. Manifestly upon this question of fact the plaintiff has the burden of proof. Buckley has admitted information that Lougee was to receive from Norvale or his company $5,000 and a block of the stock; but this admission, which is sufficient to explain and account for all of the statements in the several letters of Buckley upon which the plaintiff relies for his proof, is not equivalent to charging Buckley with knowledge of the exact interest as Lougee now claims it, equivalent to 25 per cent. of the stock of the Traction Company, for the evidence does not show, certainly not by a preponderance, that

Buckley ever saw, or was apprised of the contents and terms of, the contracts of August, 1903. The suspicion, amounting almost to a knowledge which Buckley must have entertained, that behind Norvale stood Lougee to some extent, was not, however, in our judgment, sufficient to put him on inquiry to ascertain the exact relationship between these parties and the extent and character of Lougee's interest covered by Norvale's apparent ownership, for Buckley owed no greater duty to Lougee than that he should not take advantage of the latter. ·

When the Frankfort & Versailles Traction Company was organized, October 26, 1903, by Lougee's active participation, all of the stock of the new company, except qualifying shares, was issued to Norvale. This was done upon the nomination of Norvale's Municipal Bond & Securities Company, and the exhibition of a contract between it and Lougee which recited that all Lougee's interest, of whatever nature, in the old enterprise had been acquired by the Bond & Securities Company. Lougee had produced Norvale, actively interesting him in this enterprise. The readiest inference from this situation would be that a consideration of some sort had passed from Norvale and his company to Lougee for the satisfaction of which Lougee was content to look to Norvale. There is nothing in the Buckley letters, explained as they are by him, and uninterpreted as they are because of the absence of Lougee's letters to him, inconsistent with the theory that this was Buckley's state of mind.

Every scheme which Lougee and Norvale proposed had failed and things were getting worse all the time. Lougee had notice from Buckley in November, 1904, that a crisis had come with an important franchise to lapse within two months, that "if it don't work out in the next two weeks we are all in the suds," but he took no definite steps then to look after his interests. It was a month later when Norvale authorized Buckley to sell to the associates who are defendants here. There is no pretense that this sale was for other than an adequate consideration, or that the prospect to which the purchaser looked was anything better than a speculative profit which, itself, was dependent upon the addition of much active capital to be expended for repairs and additions. The expenditures for this purpose, added to the consideration paid to Norvale and assumed of old indebtedness, made the sale, months afterward, to the Lexington Company so modest in the feature of net profit to the defendants that it is ineffective, of itself, to suggest any overreaching of Lougee.

The District Court made no error in the application of the law of the case, and we are of the opinion that it correctly decided the facts. Its decree is therefore affirmed, with costs.